

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 18, 2020

**BY ECF & EMAIL**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:**    ***United States v. Ervin Ortiz*, 18 Cr. 413 (VM)**

Dear Judge Marrero:

      The defendant in the above-captioned case is scheduled to be sentenced on October 29, 2020, at 10:30 a.m.  The Government respectfully submits this letter in connection with sentencing and in response to the defendant's submission, dated August 31, 2020 ("Def. Ltr.") (Dkt. No. 129). In the Presentence Investigation Report ("PSR"), dated March 18, 2020, the Probation Office calculated the applicable United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range to be 188 to 235 months' imprisonment (the "Guidelines Range").  For the reasons set forth below, the Government submits that a substantial sentence above the mandatory minimum of 60 months' imprisonment but below the Guidelines Range is appropriate in this case.

**I.**      **Offense Conduct**

      From May 2017 to June 2018, the defendant was a member of a drug trafficking organization ("DTO") engaged in heroin, cocaine, and fentanyl distribution in Manhattan.  (*See* PSR ¶ 11.)  The DTO primarily sold drugs out of an apartment building located at 1760 Lexington Avenue, New York, New York (the "Drug Building").  (*Id.*)  In addition to the defendant, four other members of the DTO were charged as part of this narcotics trafficking conspiracy:  Eddie Cotto, Samuel McCoy, Joseph McCoy, and Jimmy Rivas.

      Eddie Cotto was the leader of the DTO.  Cotto supervised and coordinated the supply of narcotics to his co-defendants, including the defendant.  (*Id.* at ¶ 13.)  Cotto typically served as the gatekeeper of the Drug Building and would often stay in a Winnebago that he parked in the vicinity of the Drug Building.  (*Id.*)  During the course of the day, Cotto would direct his co-defendants, generally via walkie-talkie, to serve customers Cotto was sending to the Drug Building to complete narcotics transactions.  (*Id.*)

      The defendant was involved in the sale of heroin to confidential sources working for the FBI on at least 8 separate occasions during the course of the conspiracy.  (*Id.*)  The defendant

Rev. 07.20.2016

generally worked as the DTO's doorman, directing customers (including the confidential sources) to the appropriate floor of the Drug Building to engage in narcotics transactions with other members of the DTO.  (*See id.* at ¶ 16.)  During one controlled buy, which occurred while Eddie Cotto was incarcerated, the confidential source called the defendant who told the confidential source that he could get heroin for the confidential source.  Thereafter, the defendant met with the confidential source in a vehicle and personally sold heroin to the confidential source.  In total, the defendant is responsible for distributing at least 1 kilogram of heroin mixed with fentanyl and at least 33 grams of cocaine during the course of the conspiracy.  (*Id.*)

## II.    Procedural History

On June 12, 2018, the defendant was charged by Indictment 18 Cr. 413 (VM) with one count of participating in a conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin and fentanyl and mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(C), and 846.  (PSR ¶ 1.)  On September 27, 2019, the defendant pled guilty pursuant to a plea agreement to participating in a conspiracy to distribute and possess with intent to distribute 1 kilogram and more of heroin and 33 grams and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846, which carries a mandatory minimum of 60 months' imprisonment.  (PSR ¶ 4.)  In the plea agreement, the parties stipulated that the offense involved at least 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight, yielding an offense level of 30.  (*Id.*)  However, as the defendant is a career offender, the defendant's base offense level became 34, his Criminal History Category is VI, and accordingly his Guidelines range is 188 to 235 months' imprisonment.  (*Id.*)  The Probation Office agreed with the parties' Guidelines calculation.  (PSR ¶¶ 22-47).

On August 31, 2020, the defendant submitted a sentencing letter in which he requested a sentence at or close to 60 months' imprisonment.  (Def. Ltr 2, 12.)  The Probation Office recommended a below-Guidelines sentence of 98 months' imprisonment.  (PSR at 23-25.)

## III.   Discussion

### A.  Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. 220, 264 (2005).  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence

disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C.
§ 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence
sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to
provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational training, medical
care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## B.  A Substantial Sentence Above the 60-Month Mandatory Minimum but Below the Guidelines Range is Warranted

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the
sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to
provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to
protect the public from further crimes of the defendant. These considerations weigh in favor of a
substantial sentence above the 60-month mandatory minimum, but below the Guidelines Range.

*First*, a substantial sentence above the 60-month mandatory minimum, but below the
Guidelines Range, would appropriately reflect the nature and seriousness of the defendant's
conduct, provide just punishment for the offense, and deter others who are similarly situated. The
defendant was a key participant in regular sales of heroin, much of it mixed with fentanyl, on
behalf of the DTO. The defendant's conduct was serious and consistent, and his actions ensured
that the conspiracy continued to serve existing customers and attract new ones. The poison sold
by the defendant and his co-conspirators caused harm to untold numbers of residents of New York
as well as to himself. The Government does not contest ████████████████████████
████████████████████. While ██████████████████████ does not negate his culpability or the harm he
inflicted upon his community, it is a factor the Court should consider in fashioning an appropriate
sentence in this case.

*Second*, a substantial sentence above the 60-month mandatory minimum, but below the
Guidelines Range, would appropriately promote respect for the law and protect the public from
further crimes of the defendant. Not counting this case, the defendant has approximately 13
criminal convictions, including for four felonies. Despite these many convictions, several of which
involved narcotics offenses, the defendant remained undeterred and continued to lead a life
plagued by crime. The defendant has proven himself, through his actions, to be a person for whom
modest sentences are insufficient to change his behavior and from whom the public needs to be
protected.

*Third*, a substantial sentence above the 60-month mandatory minimum, but below the Guidelines Range, would avoid unwarranted sentencing disparities. Among the co-conspirators, the defendant's conduct and criminal history are most similar to that of Samuel McCoy. Cotto typically directed customers to the defendant, who stayed at or near the entrance of the Drug Building; the defendant then directed the customers to the appropriate floor of the Drug Building to purchase drugs, typically from Samuel McCoy. Like the defendant, Samuel McCoy was ███ ███ and career offender whose Guidelines range was 188 to 235 months' incarceration. The Court sentenced Samuel McCoy to 98 months' incarceration—the same period of incarceration recommended by the Probation Office for the defendant.

*Fourth*, the Government respectfully submits that the defendant's pre-sentencing conditions of confinement as well as the COVID-19 pandemic do not warrant a sentence different than that sought herein. Although the Second Circuit has recognized that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001), the court in *Carty* alluded that such departures were applicable only where the conditions of pre-sentence confinement were so severe as to take a particular case outside the heartland of the applicable Guideline. *Id.*; *see also United States v. Mateo*, 299 F. Supp. 2d 201, 208 (S.D.N.Y. 2004) ("[C]ourts have granted relief generally where the conditions in question are extreme to an exceptional degree and their severity falls upon the defendant in some highly unique or disproportionate manner").[1] Here, while the defendant has alleged harsh conditions at the MDC, he has not established that the conditions he experienced were "extreme to an exceptional degree" or affected him in a "highly unique or disproportionate manner." *See id.*[2] Furthermore, the case cited by the defendant in support of his position is distinguishable. *See United States v. Simon*, 18 Cr. 390 (PAE) (Dkt. 507) (granting compassionate release to 72-year-old defendant afflicted with ███████████████████████████ ████████████████████████████████████████████████████). Even assuming the defendant's age (61) and ██████████████████████████ place him at greater risk of COVID-19[3], the defendant's BOP medical records appear to reflect that he has received timely and appropriate care while in custody. During his pretrial interview, he stated that he was in excellent physical health with no medical problems. Furthermore, there are no allegations that, even in the midst of an international health pandemic, he has requested but failed to receive

---

[1] Unlike *Carty* and *Mateo*, which concerned departures, and consistent with the defendant's plea agreement, the defendant here seeks a variance rather than a departure.

[2] In *Carty*, the defendant was detained for approximately eight months in a Dominican prison, where he claimed he was held in a four-foot by eight-foot cell with three or four other inmates, there was no light in his cell, he received ten to fifteen minutes per day outside of his cell to bathe, his only toilet was a hole in the ground, and he lost forty pounds during that time as a result. *Carty*, 264 F.3d at 193. In *Mateo*, the defendant was subject to sexual abuse by a prison guard and then had to give birth without medical care. *Mateo*, 299 F. Supp. 2d at 211. As a result, the district court found in *Mateo* that the trauma suffered by the defendant was extraordinary and inflicted upon her to a disproportionate degree and applied a downward departure. *Id.* at 212.

[3] The CDC includes ████████ among the medical conditions that might cause someone to be at increased risk for severe illness from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 15, 2020).

appropriate medical attention at MDC.

In sum, a substantial sentence above the 60-month mandatory minimum, but below the Guidelines Range, adequately would balance the various considerations under 18 U.S.C. § 3553(a) and achieve the statute's stated objectives.

### IV. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a substantial sentence above the 60-month mandatory minimum, but below the Guidelines Range of 188 to 235 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: _____

Timothy V. Capozzi
Aline R. Flodr
Assistant United States Attorneys
(212) 637-1110/-2404

Cc:  Susan G. Kellman, Esq. (by ECF)
     Jacqueline E. Cistaro, Esq. (by ECF)